**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 16-CR-065 (BAH)** |
| v. | |
| **GERARDO GONZALEZ-VALENCIA,** | |
| Defendant. | |

**GERARDO GONZALEZ-VALENCIA'S OPPOSITION TO**
**MOTION FOR ENTRY OF ORDER OF FORFEITURE**

Gerardo Gonzalez-Valencia, through counsel, hereby opposes the Government's Motion for Entry of Order of Forfeiture (Doc. No. 157) (the "Motion") and respectfully requests that this Court deny the Government's request that a forfeiture money judgment be entered in the amount of $250,000,000 against Mr. Gonzalez-Valencia.

## I.   INTRODUCTION

On April 16, 2016, a federal grand jury returned a one-count indictment charging Mr. Gonzalez-Valencia with Conspiracy to Distribute Five Kilograms or More of Cocaine, and 500 Grams or more of Methamphetamine, for importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1) and 963, and 18 U.S.C. § 2.

On December 22, 2022, the Government first motioned the Court to dismiss the methamphetamine portion of Count 1, which was granted. Mr. Gonzalez-Valencia then pleaded guilty to Conspiracy to Distribute Five Kilograms or More of Cocaine, for importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1) and 963, and 18 U.S.C. § 2.

There is no written plea agreement between Mr. Gonzalez-Valencia and the Government. However, Mr. Gonzalez-Valencia acknowledged at the plea hearing before this Court that he personally invested his own funds in connection with the purchase of more than five kilograms of cocaine from Colombia, the transportation of cocaine to Central America and Mexico, and the illegal importation of the cocaine into the United States and Europe for further distribution. *See* Tr. of Plea Colloquy at 14:16-23 (Doc. No. 144). Specifically, Mr. Gonzalez-Valencia acknowledged that, in approximately 2007, he and others invested in a shipment of cocaine that he knew would be transported from Colombia to a location off the coast of Guatemala using a semi-submersible vessel. *See id.* at 14:23-15:4. The U.S. Coast Guard interdicted the semi-submersible vessel in August 2007, recovering 280 kilograms of cocaine from the water in the location where the semi-submersible sank. *See id.* at 15:14-18.

Mr. Gonzalez-Valencia's role in the conspiracy to distribute more than 5 kilograms of cocaine was financial. In other words, he used his own funds to invest in purchasing the cocaine and arranging its transport on the semi-submersible to Mexico. While he knew that some part of the shipment was destined for the United States (and Europe), his responsibility for the cocaine (and knowledge of what would happen to the shipment if it reached the Mexico) ended at the Mexican border. He was paid if and only when the cocaine arrived in Mexico and received no payment if the cocaine did not reach Mexico. He had no financial interest in the cocaine thereafter.

In 2009, Mr. Gonzalez-Valencia withdrew himself from any further involvement in illegal activities and began a new life by moving to Argentina and opening a retail convenience store business. By 2011, Mr. Gonzalez-Valencia relocated his wife and children to Argentina (and later Uruguay) because of concerns for their safety while residing in Mexico. Following his departure

from Mexico to Argentina, and later Uruguay, Mr. Gonzalez-Valencia was no longer involved in the financial side or any other aspect of the conspiracy to distribute cocaine.

On March 23, 2023, the Government filed the Motion requesting that this Court enter an Order of Forfeiture for a money judgement in the amount of $250,000,000 prior to announcing a sentence.

## II.    LEGAL STANDARD

"Criminal forfeiture statutes empower the Government to confiscate property derived from or used to facilitate criminal activity." *Honeycutt v. United States*, 581 U.S. 443, 447 (2017). One of the primary purposes of these statutes is to "serve [the] important governmental interest[]" of "separating a criminal from *his* ill-gotten gains[.]" *Id.* (emphasis added) (citation omitted). The relevant statute in the instance matter, 21 U.S.C. § 853(a), "states that a defendant, once convicted, shall forfeit: '(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; and (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.'"[1]  *United States v. Carey*, 268 F.Supp.3d 29, 31 (D.D.C. 2017) (quoting 21 U.S.C. § 853(a)). "A district court uses a preponderance of the evidence standard in determining the appropriate amount of a forfeiture." *United States v. Leyva*, 916 F.3d 14, 29 (D.C. Cir. 2019) (citation omitted).

---

[1] The Government also seeks forfeiture under 21 U.S.C. § 970, which applies 21 U.S.C. § 853 to violations of 21 U.S.C. §§ 959, 960, and 963.

## III.    DISCUSSION

The Government seeks forfeiture in the amount of $250,000,000, based on Mr. Gonzalez-Valencia's statement of facts and the evidence that the Government plans to present at Mr. Gonzalez-Valencia's sentencing hearing scheduled for May 2-3, 2023.  *See* Mot. at 1.  The Government argues that the funds it seeks are "drug proceeds attributable to [Mr. Gonzalez-Valencia] as a result of his conviction of Count One of the Indictment."  *Id.* at 7.

The Government makes no mention of evidence showing that any, let alone all, of the proceeds from the alleged shipments at issue were received by Mr. Gonzalez-Valencia, directly or indirectly.  *See id.* at 2-4.  Several courts (including at least one this Circuit) have held that, in relation to the first category of property under 18 U.S.C. § 853(a)(1), forfeiture applies only to amounts actually "obtained" by the defendant himself.  *See, e.g.*, *United States v. Cano-Flores*, 796 F.3d 83, 95 (D.C. Cir. 2015) (concluding that the "'joint and several' calculation procedure" applied by the district court in calculating the criminal forfeiture amount "erroneously included amounts not obtained by" the defendant); *Honeycutt*, 581 U.S. at 454 (holding that a defendant may not be held jointly and severally liable for property that a co-conspirator derived from the crime but that defendant himself did not acquire, under the statute mandating forfeiture with respect to persons convicted of certain serious drug crimes); *United States v. Peters*, 732 F.3d 93, 103-04 (2d Cir. 2013) (finding that "an individual 'obtains' proceeds 'indirectly' through a corporation [only] when the individual 'so extensively control[s],' . . . or 'dominate[s],' . . . the corporation and its assets[,] that money paid to the corporation was effectively under the control of the individual[,]" and ordering forfeiture where, among other facts, the defendant could directly wire transfers from the corporate accounts (first and third alterations in original) (internal citations omitted)).

For example, in *United States v. Cano-Flores*, the court found that the forfeiture ordered against the defendant by the lower court erroneously included amounts <u>not</u> obtained by that defendant.  *See* 796 F.3d at 95.  There, the court based its decision, in part, on the reasoning that in "ordinary English a person cannot be said to have 'obtained' an item of property merely because *someone else* (even someone else in cahoots with the defendant) foreseeably obtained it."  *Id.* at 91.  The D.C. Circuit opined that "indirectly," as used in 21 U.S.C. § 853(a), "*might* also be seen as embracing property received by persons or entities that are under the defendant's control (such as a closely held corporation, or an employee or other subordinate of the defendant), or property applied to the benefit of persons for whom that defendant has a legal or moral obligation of support (such as his children)."  *Id.* at 92 (emphasis added).

Importantly, the two cases referenced by the *Cano-Flores* court in support of this position regarding "indirectly" received proceeds are not only non-binding on this Court, but also inapposite to Mr. Gonzalez-Valencia's case.  The first case, *United States v. Peters*, 732 F.3d 93 (2d Cir. 2013), "held that, under a similarly worded forfeiture provision, an individual defendant [had] indirectly obtained proceeds received by a corporation 98% owned by the defendant and his wife."  *Cano-Flores*, 796 F.3d at 92 (discussing outcome and reasoning in *Peters*).  However, a two-person corporation is a far cry from the complex drug-trafficking network at issue here, for which the receipt of ill-gotten gains is much harder to trace and establish.  Likewise, the other cited case, *United States v. Stolee*, involved indirectly obtained funds deposited into a corporation *solely* owned by the defendant.  *See* 172 F.3d 630, 631 (8th Cir. 1999).

The Government principally relies on *United States v. Leyva*, 916 F.3d 14 (D.C. Cir. 2019), to support its argument that "[a]s a leader of the Los Cuinis DTO, the Defendant is liable for the drug proceeds obtained by the DTO and identified by the government."  Mot. at 8.  As explained

further in Mr. Gonzalez-Valencia's Sentencing Memorandum, Mr. Gonzalez-Valencia was not a leader of a drug trafficking organization.  *See* Sentencing Mem. at 12-13 (Doc. No. 156-2). However, even assuming, *arguendo*, that a leadership enhancement applied to Mr. Gonzalez-Valencia, the Government's conclusion falls flat.

In *Leyva*, the court, referring to the *Cano-Flores* decision, contemplated that "property obtained 'indirectly' might include 'property received by persons or entities that are under the defendant's control,' such as 'an employee or other subordinate of the defendant.'"  916 F.3d at 30-31 (quoting *Cano-Flores*, 796 F.3d at 92).  Importantly, however, the Government here suggests no evidence will show that Mr. Gonzalez-Valencia controlled the other persons involved in the conspiracy at issue, for example, as employees or subordinates.  *See* Mot. 2-4.  To the contrary, the Government describes the other two participants in the conspiracy as DTO "leaders" who were operating beside, not below, Mr. Gonzalez-Valencia; and the Government cites no evidence to suggest that Mr. Gonzalez-Valencia indirectly obtained any property through his two brothers.  *See id.*

In addition, as the Government acknowledges, the D.C. Circuit in *Leyva* calculated the money judgment "based on proceeds from activities *supervised* by Beltran Levya."  *Id.* at 8 (citing *Leyva*, 916 F.3d at 30) (emphasis added).  The Government, does not, however, plan to introduce sufficient evidence (and with respect to some transactions *any* evidence) regarding Mr. Gonzalez-Valencia's supervision or control of the transactions at issue.  *See id.* at 2-4.  For example, the Government points to "anticipated witness testimony" that Mr. Gonzalez-Valencia and his brothers invested in eight drug shipments concealed in shark carcasses delivered to the Port of Progresso. *See id.* at 3.  However, the Government fails to provide any more information indicating that Mr. Gonzalez-Valencia supervised or had any control over the outcome of these shipments.

6

Assuming, *arguendo*, that Mr. Gonzalez-Valencia invested in the shipments at issue, his mere investment in drug shipments does not qualify him as a leader, and he exercised no control or supervision over any shipments.  Indeed, courts in this Circuit frequently require more evidence than a defendant's mere investment in a drug trafficking organization in order for that defendant to qualify as leader (or organizer).  *See, e.g.*, *United States v. Lorenzana-Cordon*, Criminal Action No. 03-cr-331-13 (CKK), 2018 WL 10373745, at *6-7 (D.D.C. Jan. 18, 2018) (finding that the defendant was a "leader" of the drug conspiracy where he "had authority [of] th[e] workers," "was seen by his co-conspirators as the leader and point-person in control of cocaine shipments through his property[,]" and "engaged in high-level negotiations and decision-making about the direction and investments of the conspiracy."); *United States v. Bras*, 483 F.3d 103, 113-14 (D.C. Cir. 2007) (upholding district court's determination that defendant was a leader of the drug trafficking organization where that defendant organized the conspiracy to "make it work" at multiple locations, approached officials about bribes, and had substantial operational authority); *United States v. Borda*, 848 F.3d 1044, 1071 (D.C. Cir. 2017) (concluding that a three-point enhancement was not error where the defendant participated in the drug conspiracy "from the beginning," "supervised numerous aspects of the illegal enterprise," recruited and monitored other participants, organized "the transportation of drug proceeds[,]" "safeguarded the money[,]" "received a return on his investment" in the conspiracy, "and provided input on how to allocate" certain proceeds).  After Mr. Gonzalez-Valencia invested his funds and the cocaine was destined for Mexico, his involvement ended.  He was paid if and only when the cocaine arrived at its destination in Mexico, and he had no knowledge or control of any subsequent events.  Therefore, the proceeds for the transactions at issue should not be attributed to Mr. Gonzalez-Valencia in the Government's forfeiture calculation.

Moreover, *Levya* is readily distinguishable on procedural grounds.  In *Leyva*, the D.C. Circuit reviewed the district court's decision ordering criminal forfeiture of $529.2 million (representing the money allegedly obtained by the defendant's criminal organization) for plain error, a substantially deferential standard of review.  *See* 916 F.3d at 30-31.  This standard of review was applied, and no clear error was found, in part, because the defendant in *Leyva* had originally failed to raise the argument that the government failed to show that "the entire $529.2 million allegedly earned by the drug organization was personally acquired by the defendant," as required by *Honeywell* and *Cano-Flores*.  *Id.* at 30.  Here, in contrast, Mr. Gonzalez-Valencia timely raises this issue regarding the proper calculation method for criminal forfeiture.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Mr. Gonzalez-Valencia and his counsel respectfully request that this Court deny the Government's request for entry of a forfeiture money judgment in the amount of $250,000,000 against Mr. Gonzalez-Valencia.

Dated: April 6, 2023

Respectfully submitted,

*/s/ Stephen A. Best*

BROWN RUDNICK LLP
Stephen A. Best (DC Bar No. 428447)
Rachel O. Wolkinson (DC Bar No. 975548)
Tiffany B. Lietz (admitted pro hac vice)
601 Thirteenth Street, NW, Suite 600
Washington, DC 20005
Telephone:  (202) 536-1700
sbest@brownrudnick.com

and

The L●S LAW FIRM
Lilly Ann Sanchez (admitted pro hac vice)
Four Seasons Tower, Suite 1200
1441 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 503-5503
lsanchez@thelsfirm.com

*Counsel for Defendant Gerardo Gonzalez-Valencia*

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2023, I electronically filed the foregoing document with the Clerk of the U.S. District Court for the District of Columbia by using the CM/ECF system. All participants registered through the Court's electronic filing system will be served by the CM/ECF system as required to be served by Federal Rule of Criminal Procedure 49(a)(3)(A).

Date: April 6, 2023

  */s/ Stephen A. Best*
Stephen A. Best
601 Thirteenth Street, NW Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
sbest@brownrudnick.com

*Counsel for Defendant Gerardo Gonzalez-Valencia*